IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SOPHIE JEAN P.,[1]

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY ADMINSTRATION,

        Defendant.

Case No. 6:18-cv-02237-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

      Plaintiff Sophie P. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Title II Disability Insurance Benefits ("DIB") and Title XVI Social Security Income ("SSI"). All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND

Born in 1960, plaintiff alleges disability beginning December 25, 2009, due to widespread body pain, hypertension, depression, anxiety, sleep apnea, and right ear deafness.[2] Tr. 251, 280, 288. On June 12, 2017, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert. Tr. 77-113. On October 27, 2017, the ALJ issued a decision finding plaintiff not disabled. Tr. 63-71. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-7.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since alleged onset date. Tr. 65. At step two, the ALJ determined plaintiff's bilateral knee osteoarthritis and "right side hearing loss" were medically determinable and severe. Tr. 66. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 67.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) except:

> she can tolerate no more than moderate levels of noise[.] She can perform tasks that require frequent hearing, but she cannot perform tasks requiring sensitive hearing and/or detection of quiet sounds. She can tolerate occasional exposure to vibration and occasional exposure to workplace hazards such as unprotected heights and exposed moving machinery.

Tr. 67.

---

[2] The record before the Court contains multiple incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears.

At step four, the ALJ concluded plaintiff was able to perform her past relevant work as an automobile salesperson and membership solicitor, and therefore was not disabled. Tr. 71.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) discrediting her subjective symptom testimony; (2) failing to account for the limitations assessed by examining source Scott Alvord, Psy.D.; and (3) rejecting the medical opinion of physical therapist Patricia Brattain. Pl.'s Opening Br. 8-18 (doc. 16).

**I.    Preliminary Matters**

Before reaching the substantive merits of plaintiff's appeal, the Court must address two preliminary matters. First, plaintiff's DIB and SSI claims concern different timeframes, despite the fact that plaintiff applied for benefits on the same date. Specifically, in order to be entitled to DIB, plaintiff must establish disability between the alleged onset date (i.e., December 25, 2009) and the date last insured (i.e., December 31, 2014), whereas plaintiff's SSI claim runs from the application date (i.e., October 21, 2014) through the date of the ALJ's decision. Tr. 65, 288; Price v. Massanari, 2001 WL 34047104, *5 (D. Or. Aug. 20, 2001). Because each of plaintiff's challenges inheres to non-retrospective evidence generated in 2017, well-after the date last insured, the Court finds that only plaintiff's SSI claim is at issue on appeal. See Morgan v. Colvin, 2013 WL 6074119, *10 (D. Or. Nov. 13, 2013) (medical evidence that "was completed years after claimant's date last insured and was not offered as retrospective analysis" is insufficient to establish disability within the DIB period) (citations and internal quotations and ellipses omitted).

Second, plaintiff's counsel failed to raise any issues in relation to the ALJ's step two finding, or to otherwise argue that plaintiff was incapable of her past relevant work due to recently diagnosed impairments. See generally Pl.'s Opening Br. (doc. 16). This is significant because the

ALJ wholly overlooked plaintiff's March 2017 spinal imaging study revealing significant degenerative changes. Compare Tr. 864 (March 2017 imaging study showing mild "sacroiliac osteoarthritis" and "[a]dvanced degenerative changes [in] the lower lumbar spine"), with Tr. 744 (December 2012 imaging study showing an "[u]nremarkable lumbar spine"); see also Case v. Astrue, 425 Fed.Appx. 565, 566 (9th Cir. 2011) ("ALJ must consider impairments even if they were diagnosed after the alleged date of disability onset") (citation omitted). In addition, although plaintiff was observed with 11 tender points (only seven of which were "really tender") in January 2013, she was not formally diagnosed with fibromyalgia until after the ALJ's decision. Tr. 23, 66, 575; see also Tr. 83 (plaintiff's counsel conceding at the hearing that there was nothing "in the record [suggesting] that the fibromyalgia has satisfactorily met the Social Security ruling").[3]

Plaintiff was 57 years old as of date of the ALJ's decision and did not graduate from high school, such that a finding of disability is directed by the Medical Vocational Guidelines if she is unable to return to her past relevant work and has no transferrable skills. 20 C.F.R. §§ 404.1563(e), 416.963(e); 20 C.F.R. Pt. 404, Subpt. P, Appx. 2. Stated differently, had plaintiff's counsel raised any step two and/or contingent challenge on appeal, or amended the alleged onset date as was contemplated at the hearing, plaintiff would have likely been entitled to SSI. Tr. 82-83, 111-12; see also Dahl v. Comm'r of Soc. Sec., 2015 WL 5772060, *5 (D. Or. Sept. 30, 2015) (even mild degenerative disc disease can be disabling) (collecting cases).

However, because these issues are not currently before the Court and, as discussed below, the purported errors raised by plaintiff's counsel do not warrant remand, no recourse is available on the bases of plaintiff's current applications. See Carmickle v. Comm'r, Soc. Sec. Admin., 533

---

[3] The ALJ nonetheless found that plaintiff's fibromyalgia was medically determinable but not severe at step two, such that he considered it at subsequent steps of the sequential evaluation process. Tr. 66-71.

Page 4 – OPINION AND ORDER

F.3d 1155, 1161 n.2 (9th Cir. 2008) (court "will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief) (citation and internal quotations omitted); see also McLeod v. Astrue, 640 F.3d 881, 887-88 (9th Cir. 2011) (as amended) (party seeking reversal bears the burden of establishing harmful error). Indeed, defendant's opposition, which addresses each of plaintiff's allegations and explains why no error occurred, is essentially unopposed because plaintiff neglected to file a reply brief. See Justice v. Rockwell Collins. Inc., 117 F.Supp.3d 1119, 1134 (D. Or. 2015), aff'd, 720 Fed.Appx. 365 (9th Cir. 2017) ("if a party fails to counter an argument that the opposing party makes . . . the court may treat that argument as conceded") (citation and internal quotations and brackets omitted).

Regardless, nothing prevents plaintiff from filing a new SSI application based on the impairments diagnosed in 2017. See Epperson-Nordland v. Colvin, 2013 WL 5774110, *3 (D. Or. Oct. 22, 2013) (res judicata applies to bar reconsideration of prior claims only if "the Commissioner has previously made a final decision premised on the same facts and on the same issue or issues") (citations and internal quotations omitted).

## II. Plaintiff's Testimony

Plaintiff argues the ALJ erred by discrediting her subjective symptom testimony concerning the severity of her impairments.[4] When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and

---

[4] While plaintiff generally challenges the weight afforded to her subjective symptom statements, the only specific arguments that she makes relate to fibromyalgia. Pl.'s Opening Br. 13-15 (doc. 16). Accordingly, the Court analysis focuses on the ALJ's treatment of plaintiff's physical testimony, especially given the mental health evidence, as addressed in Section IV below.

Page 5 – OPINION AND ORDER

convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, available at 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified she was unable to work due to "exhaustion [and] my hearing," as well as pain in her knees and lower back. Tr. 95-96. Plaintiff testified further that she has good days and bad days. Tr. 95, 102. In terms of her right-sided deafness, plaintiff explained that the surgically implanted hearing aid allows her to hear, although she still has trouble determining the direction of sound and experiences pain at the implantation site if she leaves the device on too long. Tr. 98-101. As for daily activities, plaintiff testified that she babysits her three-year-old grandson one day per week and does "[b]asic cooking, cleaning, [and] some [other] things, but not all things." Tr. 97-98, 103-05.

After summarizing her hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but

her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 69. Specifically, the ALJ cited to plaintiff's failure to seek treatment, daily activities, and improvement with medication. Tr. 68-70.

Notably, the ALJ found that plaintiff's failure to seek treatment for her allegedly disabling impairments until the application date undermined her subjective symptom statements. Tr. 69. Failure to seek medical treatment is a clear and convincing reason to reject a claimant's testimony. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); SSR 96-7p, available at 1996 WL 374186. Likewise, failure to report allegedly disabling symptoms to treatment providers during the adjudication period is a valid reason to discount a claimant's testimony. Greger v. Barnhart, 464 F.3d 968, 972-73 (9th Cir. 2006). Where, as here, there is a remote date last insured, "contemporaneous self-reports to medical providers, as memorialized by their treatment notes, are the most accurate portrayal of functioning." O'Brien v. Comm'r of Soc. Sec. Admin., 2014 WL 6432830, *4 (D. Or. Nov. 13, 2014).

Substantial evidence supports the ALJ's conclusion in the case at bar. The pre-2015 medical records largely pertain to transitory conditions (such as rashes or dental pain), and medication management for non-severe conditions (such as asthma and hypertension). Tr. 378-404, 499, 543-97. Between December 2009 and September 2014, plaintiff only reported back pain during two brief periods (i.e., between June and July 2011, and December 2012 and January 2013), despite seeking regular treatment; the only mention of hip pain occurred in December 2012 and there is no mention of knee pain. Tr. 574-75, 579, 582, 595-96.

In fact, plaintiff did not assert any notable disability-related complaints until October 2014, when she presented with back pain, and knee and hip/groin pain that made walking difficult. Tr.

501, 556-57; see also Tr. 137 (state agency consulting sources opining that the record "is not sufficient to document any significant physical impairments prior to . . . 10/2014"). The following month, plaintiff endorsed ongoing hip pain and "nodding off at the wheel" while driving, despite "normal energy in daytime." Tr. 504, 555. At that time, plaintiff was referred to a sleep clinic, and hip and knee injections were recommended; plaintiff declined the injections because "[s]he's afraid" and did not obtain a sleep study until August 2015. Tr. 506, 551, 556, 641, 771-72.

Thereafter, plaintiff did not present with any pain complaints until June 2015; however, her chief concerns at that time were allergy symptoms and weight gain. Tr. 551-53. As such, plaintiff once again declined injections and instead "[p]referred to try something else," such as physical therapy. Id. Despite obtaining a referral at that visit, there are no records of any physical therapy until May 2017. Tr. 913-15.

After repeat imaging studies conducted in July 2015 confirmed bilateral knee osteoarthritis and no hip abnormalities, plaintiff's provider suggested that her "pain may be from fibromyalgia" and prescribed duloxetine. Tr. 418-23, 535-36, 548-50, 641. During her next visit in August 2015, plaintiff reported that the duloxetine "was already helping as she was able to walk across parking lots . . . today without any pain, was surprised and pleased." Tr. 545-46. The following month, plaintiff disclosed her pain "was overall better with duloxetine." Tr. 543, 697. Although plaintiff sought follow up care for other issues, she did not disclose any disabling pain symptoms throughout the remainder of 2015. Tr. 699-707.

In February 2016, plaintiff presented with hip pain "so [bad] that she wants to fall down" if "she walks too quickly." Tr. 707. Plaintiff's provider remarked that he was "not clear" as to the reason for plaintiff's pain given his examination findings and plaintiff's unremarkable imaging studies, such that he "was leaning towards fibromyalgia" as the cause. Tr. 708.

The next treatment note is not until December 2016, nearly ten months later, at which point plaintiff presented to a new provider, Sagen Olson, P.A., with discomfort surrounding the implant site of her hearing aid. Tr. 855-56. In February 2017, plaintiff sought treatment for fibromyalgia and a dental infection, and follow-up care for her hearing implant. Tr. 852-54. In relevant part, plaintiff indicated that her fibromyalgia medications were "helping somewhat." Tr. 852. Mr. Olsen instructed plaintiff to continue her medications and increase her physical activity; physical therapy was recommended but plaintiff declined. Tr. 853-54. Between February and April 2017, plaintiff sought regular care with Mr. Olsen; he changed her fibromyalgia medications "with fairly good relief" and eventually placed a referral for physical therapy. Tr. 855-71. Except for those relating to plaintiff's successful cochlear implant surgery and follow-up care, there are no other physical treatment notes in the record before the Court.

Plaintiff therefore did not report significant and/or continuous back, knee, or hip pain to her medical providers for an almost five year period. The treatment notes post-dating October 2014 reveal intermittent pain flare-ups but no significantly debilitating symptoms until 2017. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that are effectively controlled with treatment are not disabling).

Additionally, the ALJ noted that plaintiff "can perform a variety of activities of daily living despite her health problems." Tr. 68. An ALJ may discredit a claimant's testimony when he or she engages in activities that "are transferable to a work setting" or "contradict claims of a totally debilitating impairment," even if "those activities suggest some difficulty functioning." Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted).

The record reflects that plaintiff reported activities to her providers that were in excess of her testimony at the hearing. For instance, plaintiff cooked, performed light cleaning, provided

regular childcare, rode public transportation, shopped, went bowling, spent time with family and friends, and looked for work and interviewed for jobs. See, e.g., Tr. 316-18, 527, 567, 576, 579, 591, 768, 779, 826. Furthermore, despite endorsing disabling fatigue at the hearing, the record demonstrates that plaintiff used marijuana three times per day while also taking several other prescription medications, including narcotics. Tr. 83, 523, 527, 547, 779. As such, the Court cannot conclude that plaintiff's fatigue is attributable to her allegedly disabling impairments as opposed to her recreational cannabis usage.

In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements concerning the extent of her impairments. The ALJ's evaluation of plaintiff's testimony is affirmed.

### III. Acceptable Medical Source Opinion Evidence

Plaintiff asserts the ALJ failed to properly account for the moderate mental impairments assessed by Dr. Alvord in the RFC. There are three types of physician opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. Id. To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons supported by substantial evidence. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons supported by substantial evidence. Id.

In April 2017, Dr. Alvord completed a neuropsychological assessment of plaintiff at the request of her attorney. Tr. 824-28. Dr. Alvord's evaluation was based on an interview with plaintiff; a review of the neuropsychological assessment completed by John Adler, Ph.D., in May

2015 and limited mental health treatment notes; and objective cognitive tests. Id. The latter indicated that plaintiff's memory, thought content, stream of mental activity, orientation, attention/concentration, and fund of general information were intact. Tr. 826-27. Similarly, plaintiff's abstract thinking and insight/judgment were deemed "adequate." Tr. 827.

In the narrative portion of his report, Dr. Alvord opined that, despite the fact that plaintiff "describ[ed] some attention and focus/concentration limitations . . . I see her neurocognitive functioning is within normal limitations [and] I do not see evidence of a cognitive disorder." Tr. 828. Accordingly, he diagnosed plaintiff with "Bipolar II" and "Somatic Symptom Disorder," with a rule out diagnoses of "Cannabis Abuse." Id.

Dr. Alvord's assessment was accompanied by a corresponding "Medical Source Statement of Ability to do Work-Related Activities (Mental)" form, which, in pertinent part, defined a moderate impairment as "more than a slight limitation in this area but the individual is still able to function satisfactorily." Tr. 829. Based on that definition, Dr. Alvord checked boxes indicating plaintiff was moderately impaired in her ability to: understand and remember complex instructions, carry out complex instructions, make judgments on complex work related decisions, interact appropriately with supervisors, and interact appropriately with co-workers. Tr. 829-30. Despite repeated prompting on the form, Dr. Alvord did not identify any factors that supported his assessment. Id.

The ALJ reviewed the mental opinion evidence, first noting that Dr. Adler's May 2015 report reflected only "mild problems with comprehension, memory, and concentration," but these deficits were "likely . . . related to [plaintiff's] significant substance use problems." Tr. 70 (internal quotations omitted); see also Tr. 526-29 (Dr. Adler diagnosing plaintiff with "Cannabis use disorder" and opining that her "significant substance use problems . . . certainly may contribute to

any [of the assessed] mild cognitive problems"). The ALJ then noted that Dr. Alvord's subsequent evaluation revealed "only minimal mental decline even with ongoing marijuana use." Tr. 70.

Thus, contrary to plaintiff's assertion, the ALJ did not wholly reject Dr. Alvord's opinion. Rather, the ALJ evaluated the only opinion evidence in the record from an examining or treating source related to plaintiff's mental functioning and found that it was not indicative of any concrete work-related limitations. The Court agrees.

Initially, as the Commissioner emphasizes, the check-box form completed by Dr. Alvord established that an individual who is moderately impaired in any category is "still able to function satisfactorily," a definition with is consistent with "Dr. Alvord's opinion that Plaintiff's neurocognitive functioning was within normal limits." Def.'s Resp. Br. 8 (doc. 17) (citations and internal quotations omitted). In other words, given the definitions employed in Dr. Alvord's "Medical Source Statement," an assessed moderate limitation need not necessarily be reflected in the RFC. See 20 C.F.R. §§ 404.1545, 416.945 (RFC "is the most you can still do despite your limitations").

The only other medical evidence pertaining to plaintiff's mental functioning is from the state agency consulting sources, who both found that plaintiff's mental impairments were non-severe. Tr. 121, 134, 151-52, 165. In particular, Winifred Ju, Ph.D., and David Scott, Ph.D., reviewed the record in May and December 2015, respectively, and opined that plaintiff's "cannabis abuse [disorder] does not cause significant limitations in her ability to function or perform work related mental activities." Id. Plaintiff does not now challenge this evidence or, as addressed in Section I, the ALJ's step two finding that her mental impairments were non-severe. Tr. 66-67. Indeed, consistent with both the state agency consulting sources, as well as the reports of Drs. Adler and Alvord, plaintiff's counsel indicated at the hearing that plaintiff's issues are "mainly

physical." See Tr. 82 (plaintiff's counsel summarizing Dr. Alvord's report as follows: "he felt that her mental health impairments were not her main issue and [she] did not have significant cognitive deficits [which] can lead to a conclusion that the cannabis use is not a main problem").

Because the record does not contain any evidence evincing that plaintiff sought or obtained regular mental health treatment, the aforementioned reports from examining and consulting sources formed the basis of the ALJ's decision, and none of these reports are indicative of any concrete mental limitations. The ALJ's evaluation of Dr. Alvord's opinion is affirmed.

### IV. Lay Medical Source Opinion Evidence

Plaintiff contends the ALJ improperly weighed Ms. Brattain's opinion. At the time of the ALJ's decision, only "acceptable medical sources" could diagnose and establish that a medical impairment exists; evidence from "other sources" could nonetheless be used to determine the severity of an impairment and how it affects the claimant's ability to work. 20 C.F.R. §§ 404.1513, 416.913. "Other sources" include, but are not limited to, physical therapists. 20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06-03p, available at 2006 WL 2329939. To disregard the opinion of a non-acceptable medical source, the ALJ need only provide a reason that is germane to that witness. Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010).

In May 2017, plaintiff presented for her first physical therapy session with Ms. Brattain. Tr. 913-15. During the intake interview, plaintiff reported widespread body pain since a motor vehicle accident in 1998, with symptoms worsening "about 5 years ago." Tr. 913. Plaintiff also reported an inability to stand or walk for more than 10 minutes at one time. Id.

Ms. Brattain's independent examination denoted that plaintiff's gait was abnormal and her range of motion limited. Tr. 913-14. Although Ms. Brattain did not assess any functional limitations, she identified one of plaintiff's "goals" as increasing standing and walking endurance,

from "10 min or less without increased pain" to "20 min w/o increased pain." Tr. 914. In the narrative portion of her assessment, Ms. Brattain indicated that plaintiff would "benefit from" physical therapy, weight loss, and exercise. Tr. 915. Plaintiff's rehabilitation potential was listed as "Good" and ten additional weekly sessions were recommended, although plaintiff concedes there are no other physical therapy records. Tr. 917; Pl.'s Opening Br. 17 (doc. 16).

The ALJ "decline[d] to adopt Ms. Brattain's report" because "it is not consistent with contemporaneous medical evidence." Tr. 70. Namely, the ALJ cited to plaintiff's prior physical examinations, which showed no acute distress and normal motor strength, as well as plaintiff's reports that her medications were "fairly" effective. Id. In addition, the ALJ observed that Ms. Brattain's prognosis and recommendation for regular exercise "suggests that not only is [plaintiff] capable of increased physical activity – but that such activity is indicated to improve her overall functioning." Id.

An ALJ need not accept lay testimony that is not consistent with the medical or other evidence of record. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (citation omitted). Here, Ms. Brattain's opinion is contravened by both the medical record and plaintiff's subjective symptom testimony. Regarding the former, outside of Ms. Brattain's evaluation, there is no indication that plaintiff had an abnormal gait or balance problems. To the contrary, multiple providers assessed plaintiff repeatedly with a "[s]table gait [and no] obvious balance problems." See, e.g., Tr. 441, 463, 469, 475, 491, 524, 770.

Further, plaintiff's own statements reflect that she is capable of physical activities beyond those outlined in Ms. Brattain's report. For example, in her January 2015 "Adult Function Report," plaintiff stated that she could stand or walk for 20-30 minutes before needing to rest. Tr. 314. A few months later, in April 2015, plaintiff reported "work[ing] out for 20 minutes, 2 times weekly."

Tr. 778-79. At the hearing, which took place five weeks after Ms. Brattain's assessment, plaintiff testified that she could stand for 20 minutes before needing to change position, and routinely remains on her feet for 45-60 minutes cooking provided that she can occasionally lean over the sink to rest. Tr. 106-07. The ALJ's assessment of Ms. Brattain's opinion is upheld.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 11th day of December, 2019.

                                    /s/ Jolie A. Russo
                                        Jolie A. Russo
                              United States Magistrate Judge